> Decree affirmed, and appeal dismissed at the costs of appellant.

------

## APPEAL OF THE LANCASTER CO. N. BANK.
## APPEAL OF E. H. HERSHEY.

### [First N. Bank v. Herr.]

FROM THE DECREE OF THE COURT OF COMMON PLEAS OF LANCASTER COUNTY.

Argued May 22, 1889—Decided June 7, 1889.

1. Where land is devised at a valuation or price to be paid by the devisee, the money payable becomes a charge on the land in the hands of the devisee accepting the devise, with a lien which is superior to the lien of judgments subsequently entered against the devisee.
2. Releases executed by trustees of the person entitled to the valuation money, acknowledging payment thereof, though duly recorded prior to the entry of judgments against the devisee, do not relieve the land from the charge, if the evidence show that the money was not in fact paid and that the releases were without consideration.

Before STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Nos. 391 January Term 1889 and 93 July Term 1889, Sup. Ct.; court below, No. 12 January Term 1888, E. D., C. P.

On December 25, 1845, Abraham Herr died, testate, leaving a widow and nine children. By his will he devised a tract of

land to his son Henry F. Herr, at a valuation of eighty dollars an acre, and directed that the sum of $1,500 of the valuation money "be and remain charged on said premises, and my son Henry shall pay the yearly interest thereof, at the rate of five per cent, to my said wife Susanna during her lifetime." After providing for a legacy of $500 to his son Abraham, the testator made the following provision as to his daughter Catharine's one ninth share:

"Item. It is my will, and I do order that my daughter Catharine's share, shall be invested in real estate by my executors, for the use and benefit of my said daughter Catharine, intermarried with Jacob Kreider, for her use and benefit during her natural life, and after her death, the same shall be equally divided amongst her children, share and share alike."

The will was duly admitted to probate, and letters thereon issued to testator's sons, Rudolph, Abraham, Christian F., John and Henry F., the executors named therein.

On June 17, 1887, two judgments were entered against Henry F. Herr, who had accepted the farm devised to him by the will, one in favor of the Lancaster County National Bank for $7,041, and the other in favor of E. H. Hershey for $1,000. Henry F. Herr remained in possession of the farm until December 31, 1887, when it was sold by the sheriff under process issued from a judgment upon a mortgage which antedated all other judgments against Henry F. Part of the proceeds were distributed to liens about which there was no dispute, and the balance of the fund, to wit: $2,939.20, having been paid into court, *Mr. E. D. North* was appointed auditor to report a distribution.

The contest which arose was between the Lancaster Co. N. Bank and E. H. Hershey, who claimed that the fund in court should be awarded to them pro rata, on the one side, and the testator's daughter Catharine (intermarried with Jacob Kreider), on the other, who claimed that a portion of the fund should be awarded to the protection of her rights under the will.

On the part of the judgment creditors, certain releases were produced; one, dated May 19, 1851, recorded August 26, 1852, wherein Abraham Herr, Christian F. Herr and John Herr, three of the executors, acknowledged that, as executors and trustees

of Catharine's share under the will, they had received all of her moneys then payable by Henry F. Herr, being all but the $1,500 charged during the life of the widow, and released Henry F. and the land devised to him therefrom; another, dated April 1, 1883 (the widow Susanna having died), recorded November 16, 1886, wherein the same three, as executors and trustees of Catharine's share, acknowledged that they had received Catharine's share of the amount charged during the life of the widow, and released Henry F. and the lands devised to him therefrom.

On the part of Mrs. Kreider, evidence was adduced to show that when the foregoing releases were given no money whatever was passed, or had been paid before or since, on account of her share under the will, and that the releases were without consideration.

On September 8, 1888, the auditor filed a report which in part was as follows:

It is part of the proceeds of the sheriff's sale of this same land devised to the said Henry F. Herr by the last will and testament of his father Abraham Herr, deceased, which is now in court for distribution.

It has been decided by the Supreme Court, that where land is devised subject to the payment of the valuation money, the devisee takes the land subject to the payment of the sum with which it is charged, provided the devise be accepted: Hart v. Homiller, 23 Pa. 39.

The fund now before the auditor for distribution is claimed, on the one hand, by the judgment creditors of Henry F. Herr, they alleging that the said Henry F. Herr has heretofore paid to all the other heirs and legal representatives of the said Abraham Herr, deceased, their full and respective shares of the valuation moneys of the lands devised to him as aforesaid, including the $1,500 charged thereon during the life of the testator's widow, Susanna, and that the said Catharine Kreider's share thereof was paid to her trustees for her use. On the other hand, the said Catharine Kreider claims that she is entitled to be paid out of the said fund, for her use during her natural life, the sum of $166.66 as her share of the said sum of $1,500 charged on said lands during the life of the testator's widow,

Susanna, her share being the one ninth part thereof, and that at her death the said sum of $166.66 is to be paid to her children, share and share alike, and that she is entitled in her own right to the interest on said sum of $166.66, at the rate of 5 per cent per annum from April 1, 1887, to the date of the sheriff's sale, to wit: December 31, 1887; and further, that she is also entitled to be paid out of the said fund her share of the testator's estate which the testator directed his executors (of whom the said Henry F. Herr was one) to invest in real estate for her use and benefit during her natural life, and that she is entitled to the interest on her said share at the rate of 5 per cent per annum, during the term of her natural life, and that at her death the said share shall be equally divided amongst her children, share and share alike, in accordance with the testator's will; and that she is entitled in her own right to the interest on her said share of the testator's estate, at the rate of 5 per centum from April 1, 1887, to the date of the sheriff's sale of the said premises, to wit: December 31, 1887; she alleging that the said Henry F. Herr has never paid out her share of the said sum of $1,500 charged on said lands during the life of the testator's widow, Susanna, and that he has never paid out her share of the valuation moneys of the lands devised to him by the testator's will, nor her share of the testator's estate, and that these respective sums remained charged on said lands at the time of the sheriff's sale thereof, and are entitled to priority of payment out of the proceeds of said sale; and alleging further, that the said Henry F. Herr has paid to her annually and regularly until April 1, 1887, the interest, at the rate of 5 per cent per annum, on the said sum of $166.66, as her share of the said sum of $1,500 charged on said lands during the life of the testator's widow, Susanna, and also on the sum of $534.90, as the one fourth part of her share of the testator's estate (other than the said sum of $1,500), both of which sums, she alleges, Henry F. Herr always acknowledged were part of the valuation moneys of his said lands and still remained charged thereon, neither of the said sums ever having been paid out by him. What the amount of Catharine Kreider's share in the testator's estate (exclusive of her share of the said sum of $1,500), was, will appear further on.

In support of the allegation of the judgment creditors, that

the said Henry F. Herr has paid off the whole of the valuation moneys of the lands devised to him by the testator's will, they say, that excepting the sum of $1,500 charged on said land during the life of the testator's widow, Susanna, there was, on May 19, 1851, by mutual agreement of the heirs, a complete and final settlement and distribution of the whole of the testator's estate amongst all of the heirs and legal representatives of the testator, other than his son Rudolph, whose advancement and indebtedness to the testator's estate far exceeded the share of one of the children therein, according to the report of an auditor appointed by the Orphans' Court of Lancaster county to distribute the whole of the testator's estate according to his will, and to establish this fact they offer in evidence the record of the following releases, to wit :·

\*        \*        \*        \*        \*        \*        \*        \*

Has Henry F. Herr paid to the other heirs of the said Abraham Herr, deceased, their full and respective shares of the valuation moneys of the lands devised to him, including $1,500 charged thereon during the life of the testator's widow, Susanna Herr ?

Christian F. Herr and John Herr, two of the testator's sons, and two of the executors of his will, and, as such, trustees under said will of the share of the testator's daughter, Catharine Kreider, both say that the said Henry F. Herr did not, either at the time of the execution of the above-mentioned release from Abraham Herr's heirs to Henry F. Herr, dated April 1, 1883, nor at any other time, before or since, pay to them, respectively, any part of the share of Catharine Kreider, in the said sum of $1,500 charged on said lands during the life of the testator's widow, Susanna; and Catharine Kreider, herself, says that she never received any part of the principal of said sum; and she also says, and the evidence is uncontradicted, that Henry F. Herr has paid to her the interest on the said sum of $166.66 (as her share of the said $1,500), at the rate of five per cent per annum, annually and regularly up to April 1, 1887; and Solomon Zeamer, a son-in-law of Catharine Kreider, swears that Henry F. Herr told him that Catharine Kreider's share of this money was never paid out and still remains in the land, and that he paid her the interest on her share of the said $1,500, to wit: On the sum of $166.66, an-

nually, at the rate of five per cent per annum. This he told him when he paid her the interest on April 1, 1887. The veracity of these witnesses is unimpeached and their testimony is uncontradicted except in so far as it is contradicted by the above release. The auditor has no hesitation in finding the facts as sworn to above.

Abraham Herr, another of the executors of the will, and one of the trustees of Catharine Kreider's share of the estate, is dead, and Henry F. Herr, the other trustee, has left for parts unknown. . . . .

From the evidence the auditor finds, that Catharine Kreider's share of the said sum of $1,500, to wit: the one ninth thereof, or the sum of $166.66, has never been paid out by the said Henry F. Herr; that the said sum is part of the valuation moneys of the lands devised to him by the testator's will; that he has paid the interest thereon, at the rate of five per cent per annum, to Catharine Kreider until April 1, 1887; that the said sum of $166.66, together with interest thereon from April 1, 1887, at the rate of five per cent per annum, was a valid and subsisting charge on the lands devised to him, at the time of the sale thereof, and entitled to priority of payment out of the proceeds of the sale of said lands in preference to the judgments against him, and that, so far as Catharine Kreider and her children are concerned, the above mentioned release is without consideration, and therefore void as to them. See Bixler v. Kunkle, 17 S. & R. 298; Witman's Appeal, 28 Pa. 376; Powell's Appeal, 98 Pa. 403.

John Herr, one of the executors of the testator's will, was called as a witness in behalf of Catharine Kreider, and, with reference to the alleged settlement of the testator's estate on May 19, 1851, and the share of Catharine Kreider in said estate, he testified as follows: "My brother Rudy was one of the executors of the will. We couldn't trust him with any of the money then, and we four others named as executors, agreed to divide Catharine's share among us, and pay her the interest annually, and at her death the principal to her children, as provided in the will." He also says: "At the time when we four executors agreed to divide Catharine's share among us, there was no money handled. There was none of Catharine Kreider's money handled at any time." In answer

to the question, " Was the one fourth of Catharine Kreider's share left by each executor in his property, and is that what you mean by dividing her share?" the witness says, " Yes, sir; that is what I mean." He also says that Henry F. Herr did not pay to him, nor to anybody else so far as he knows, any money on account of the share of Catharine Kreider in the estate of her father, Abraham Herr, deceased, either at the time when the above-mentioned release, dated May 19, 1851, was executed, or before, or after. He also testifies that he, the witness, paid the interest to Catharine Kreider yearly on $534.90; that he paid her the interest every year; that the last payment he made was in April, 1887, and he says: " Of course the $534.90 was part of the money that I was to pay under my father's will, and I kept that for Catharine Kreider, my sister."

\* \* \* \* \* \* \* \*

Catharine Kreider testifies that she never got any money from her father's estate, except the interest; that she got that all every year until the spring of 1887, and then she did not get Abraham's; that she got Henry's in the spring of 1887; that her share of her father's estate has never been paid to her; that she has never seen anything of it; that she was never present at any family settlement of her father's estate, and that they never asked her for anything. She never signed any of the releases, nor received any of the moneys except for interest, as above stated.

From the evidence the auditor finds, that in addition to the said sum of $166.66, which Henry F. Herr had in his hands as the share of Catharine Kreider in the said sum of $1,500 charged upon his said lands during the life of the testator's widow, Susanna, which was part of the valuation moneys of the lands devised to him as aforesaid, and which was a valid and subsisting charge on said lands at the time of the sheriff's sale thereof, he also had in his hands the further sum of $534.90 as part of the share of Catharine Kreider in the estate of her father Abraham Herr, deceased, the interest of which was to be paid to her annually, at the rate of five per cent per annum, during her natural life, and at her death the same to be equally divided amongst her children, share and share alike, as directed in the testator's will; that the said Henry F. Herr has never

paid out the said sum of $534.90 to Catharine Kreider, or for her use; that he has paid to Catharine Kreider the interest on the said sum of $534.90, up to April 1, 1887, at the rate of five per cent per annum; that the said sum of $534.90 is part of the share of Catharine Kreider in the testator's estate, and part of the valuation moneys of the lands devised to the said Henry F. Herr, by the testator's will; that the said sum of $534.90, together with the interest thereon from April 1, 1887, at the rate of five per cent per annum, was a valid and subsisting charge on said lands at the time of the sheriff's sale thereof, on December 31, 1887, and that the said sum of $534.90, together with interest thereon from April 1, 1887, to December 31, 1887, at the rate of five per cent per annum, is entitled to priority of payment out of the proceeds of the sheriff's sale of the said lands, in preference to the judgments against the said Henry F. Herr.

It may be added, also, that judgment creditors are not within the protection of the recording acts, and that they stand in the shoes of their debtor and can claim no greater rights than he himself possesses. If Catharine Kreider had brought suit against Henry F. Herr, for the recovery of these moneys, could he, under the circumstances, have defended successfully, on the ground that he had paid these moneys out? Clearly not; and if he could not, neither could his judgment creditors, who stand in his shoes and have no greater rights than he himself possesses. See Reed's Appeal, 13 Pa. 476; Rodgers v. Gibson, 4 Y. 111; Heister v. Fortner, 2 Binn. 40; Cover v. Black, 1 Pa. 493; Morris v. Ziegler, 71 Pa. 450; Ludwig v. Highley, 5 Pa. 132; Cadbury v. Duval, 5 Clark 206.

Hence it follows that in the distribution of the fund now before the auditor, the judgment creditors must be postponed to the claims of Catharine Kreider.

The auditor accordingly recommended a decree distributing $701.56 to the use of Catharine Kreider, the interest to be paid to her during life, and the principal to be divided among her children after her death, and $26.31 interest on said sum from April 1, 1887, to December 31, 1887; the balance of the fund for distribution to go to the bank and to Hershey, pro rata.

The bank and Hershey both excepted to the allowance of

Catharine Kreider's claim.   The exceptions were overruled by the court, PATTERSON, J., and the auditor's report confirmed absolutely, whereupon the bank and Hershey each appealed, assigning for error the dismissal of their exceptions and the confirmation of the auditor's report.

*Mr. Wm. Aug. Atlee* (with him *Mr. B. C. Kready*), for the appellants.

*Mr. H. M. North,* for the appellee.

### LANCASTER CO. N. BANK'S APPEAL.

PER CURIAM:

The questions presented by the specifications of error in this case were rightly disposed of by the learned auditor and the court below.   Neither of the assignments of error is sustained.

> Decree affirmed and appeal dismissed at the costs of appellant.

### HERSHEY'S APPEAL.

PER CURIAM:

The questions involved in this case are substantially the same as those presented in Lancaster County National Bank's Appeal, No. 391 January Term 1889, in which the decree of the court below has just been affirmed.   By agreement of counsel the same decree is to be entered in this case.

> Decree affirmed and appeal dismissed at the costs of appellants.