## Thomas Darling, Executor, v. J. H. Edson and B. D. Carey, Appellants.

*Will—Construction—Exercise of power.*

A power was given to widow of testator "to divide all my real and personal estate among my children as she shall see proper, giving to each such share as her judgment shall dictate." *Held*, that a devise of a farm in fee to two of the children referred to in the husband's will, and the charging of such land with pecuniary legacies in favor of the other children and a daughter of a deceased child, is a valid execution of the power.

The sums directed to be paid by the two sons, were undoubtedly charges on the farm, the realty and personalty being blended by the will, and it being expressly stated that these sons took what was devised and bequeathed to them on the condition that they should pay said sums of money, it follows that these sums are to be discharged by a sheriff's sale of the farm, and are payable, before subsequent liens, out of the proceeds.

*Will—Exercise of power—Limitation to a class—Trust estate not contemplated.*

Where an estate was limited by the will of the first testator to a class, the donee of a power is without power to appoint a trust estate to one of that class, and such appointee will take an absolute estate especially when an

absolute appointment is made to said appointee as an alternative in the event of the limited appointment being in conflict with the will of the first testator.

Argued Jan. 11, 1897. Appeal No. 45, Jan. T., 1897, by defendants, from order of C. P. Luzerne Co., Oct. T., 1895, No. 390, dismissing exceptions to auditor's report and confirming a distribution thereunder. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed.

Exceptions to auditor's report. Before WOODWARD, P. J.

The question arose on distribution of proceeds of sheriff's sale of real estate of J. H. Edson, one of the defendants. The real estate sold was formerly owned by the father of defendant Eliphalet Edson, who died in September, 1864. By his will he devised and bequeathed his estate to his wife, Elizabeth Edson, with power of appointment among his children. This power of appointment was duly exercised by the widow among the children and prior to the sheriff's sale, J. H. Edson, one of the children, by virtue of certain quitclaim deeds had acquired the interests and claims of the other legatees of Eliphalet Edson and Elizabeth Edson upon the real estate sold excepting the interest of his brother, George K. Edson, who was one of the appointees under the will of Elizabeth Edson.

At the audit D. M. Osborne and B. D. Carey, contested the right of George K. Edson to come in on the fund and claimed that it should be distributed, first, to the Darling mortgage and, second, pro rata to judgments in full of D. M. Osborne & Co. against J. H. Edson and B. D. Carey who was surety for Edson.

The property was finally sold on a judgment bond with confession of judgment given by J. H. Edson, and the auditor to whom the fund was awarded for distribution, awarded to George K. Edson the amount of the bequest originally charged upon the land under the will of Elizabeth Edson and the balance to the execution plaintiffs.

The provisions of the will and other facts more fully appear in the opinion of the court.

*Errors assigned* were (1) In dismissing the exceptions of D. M. Osborne & Company and B. D. Carey to the findings

and report of the auditor, which exceptions are as follows: " 1. The learned auditor erred in finding ' Your auditor therefore concludes generally that the legacy to George K. Edson ' (in the will of Elizabeth Edson) ' was a valid charge upon the lands sold by the sheriff; was a lien upon it at date of sale; that the lien was discharged by the sale; and that the amount due on the legacy at the time should, by reason of priority of lien, be first paid out of the proceeds thereof.' 2. In not reporting the point of law and request for finding thereon, viz: ' That under the will of Eliphalet Edson, George K. Edson took an estate in fee in his father's estate, the said Eliphalet Edson.' 3. In not reporting as requested by D. M. Osborne & Co., and B. D. Carey, ' And in execution of the powers conferred by the will of Eliphalet Edson, Elizabeth Edson, the widow and donee, could not reduce the fee simple estate of George K. Edson into a less estate; could not convert the real estate into a pecuniary legacy.' 4. In not finding and reporting as requested by D. M. Osborne & Co. and B. D. Carey, ' That in the execution of the power Elizabeth Edson was confined to the apportionment of the fee simple estate among the children.' 5. In not distributing the fund in manner as follows: A. To costs. B. To the Darling mortgage. C. To the Osborne & Company judgments. 6. In distributing $572.60 to George K. Edson. 7. General exceptions." (2) In confirming the auditor's report.

*Edmund G. Butler* and *J. Q. Creveling,* for appellants.— Elizabeth Edson had no authority to dispose of the estate of her deceased husband in the manner directed by her will. Her power to divide this property was limited to a division among Eliphalet Edson's children as remaindermen. She had no power to create an estate or to add as beneficiaries the children of a living child nor could she exceed her powers in any manner: Horwitz v. Norris, 49 Pa. 213; Wickersham v. Savage, 58 Pa. 365.

The auditor and the court below substantially concluded that the above proposition is correct and without any apparent reason therefor found that Mrs. Edson made a valid testamentary execution of the power in question, by directing John H. Edson and Elisha B. Edson to pay George K. Edson $600, and that

such disposition created a charge on the land sold and she does not appoint to George K. Edson any estate in the land, but divests his estate.

The widow was made the mere instrument for partition of the estate by her will among his children, and could not give the whole to two and divest the estate of the others therein, or create a charge on the land: Schwartz's Est., 168 Pa. 204.

A sheriff's sale divests liens, but not estates. Only the interest of the debtor, J. H. Edson, was sold. George K. Edson's estate is in the land, and by partition he can have his quantum. ascertained: Railroad Co. v. Johnston, 59 Pa. 290; Schall's Appeal, 40 Pa. 170; Vandever v. Baker, 13 Pa. 121.

*Thomas Darling*, for appellee.—The lien of a legacy charged upon land is discharged by a judicial sale of the land, though the legacy is payable in instalments, some of which are not due at the time of the sale: Dexter's Appeal, 81 Pa. 403; Lobach's Case, 6 Watts, 167; Hellman v. Hellman, 4 Rawle, 440.

It is therefore contended that the first money paid by the sheriff from the proceeds of the sheriff's sale must be on account of the legacy to divest its lien from the land, and next on account of the mortgage. In no event can after creditors partake of the fund until the legacy has been divested: Hellman v. Hellman, 4 Rawle, 440; Drake's Appeal, 68 Pa. 223.

OPINION BY WICKHAM, J., April 19, 1897:

Eliphalet Edson, by his last will and testament, devised and bequeathed his estate as follows: " As to such real and personal estate as God has pleased to entrust me with I dispose of the same as follows, viz: I give and bequeath to my beloved wife, Elizabeth Edson, the full control of all real and personal estate as long as she shall remain my widow (except what is hereafter mentioned) and I also empower my said wife, on condition that she remain my widow, full power by will to divide all my real and personal estate among my children as she shall see proper, giving to each such a share as her judgment shall dictate. But should my wife see proper to get married, then my will is that she accept and receive of my property what the provisions made by the laws of Pennsylvania make for widows, and then my will is, my property, both real and personal, shall

be equally divided among my children." There is a further bequest, but as it does not enter into the present controversy it is needless to quote the language of the will as to it.

Elizabeth Edson did not remarry, and by her last will and testament undertook to exercise the limited power of appointment vested in her by her husband's will. The clauses of her will necessary to be considered in deciding the present controversy, are the following: "To my two sons John H. and Elisha B. I give, bequeath and devise all my estate, real, personal and mixed, upon the following conditions, to wit: that they will as soon after my decease as they conveniently can, pay debts and expenses and place a suitable stone at my grave as above mentioned, next, that they, within one year after my decease, pay to the heirs of Matilda Snyder, deceased, $50.00, and to my son, E. Aden Edson a like sum of $50.00; next to my son Arva J. $600, and to the use of my son George K. Edson, while he lives and to his children after his death, a like sum of $600.

" These last two bequeaths to be paid in three equal payments, one third (two hundred dollars to each) in one year from the date of my decease, another third in two years, and the balance in three years after my death, with interest after the time of the first payment.

" Now should my bequest to the use of my son George K., and to his children after his decease, exceed my right or be in conflict with my late husband's will, then and in that case I give the said sum of six hundred dollars directly to my son George K., and direct my sons John H. and Elisha B. to pay the same to him in manner as before directed."

Eliphalet Edson, at the time of his decease, was seized in fee simple of the farm, the distribution of the proceeds of the sale whereof gave rise to the present dispute. What personal property he left does not appear. The auditor finds that the widow was possessed of no personal property at the time of her death, and it seems to be conceded that she had no real estate of her own on which her will could operate. At any rate the will clearly evinces an intent on her part to execute the power vested in her, and the appellants, in their printed argument, admit that such was her purpose. We need, therefore, spend no time on this branch of the case.

The only question argued and requiring discussion is, whether the deviseof the farm in fee, to two of the children referred to in Eliphalet Edson's will, and the charging of such land with pecuniary legacies, in favor of the other children and a daughter of a deceased child, is a valid execution of the power.

Every will must be construed in the light afforded by its own words and the surrounding circumstances, and decisions on other wills, unless the cases are in all respects parallel, which rarely happens, may aid but not control the interpretation.   In the present case, while the power conferred on the life tenant is special or limited as contradistinguished from what is known as a general power, it is nevertheless more extensive in its scope than the powers considered in a class of cases cited for the appellants, and moreover its exercise is free from the wide transgression of the limits prescribed for the donee, in another class, to which our attention has been called.   The truth is there is an absence of controlling parallelism between any case cited and the one in hand.

It will be observed that Mrs. Edson was empowered to divide by will, all the real and personal estate of her husband, among his children " as she shall see proper, giving to each such a share as her judgment shall dictate."   She was not directed to divide the realty and personalty separately.   The power conferred was not to partition the land and divide the personal estate, but to divide the property as a whole.   The testator viewed his estate, real and personal, as an integral thing, for the purpose of the division.   Thus there was a blending of the two kinds of property, and the donee of the power might, wholly or partially, convert the realty, in order to give to each child such a share of the entire estate as she might see proper to award. We see no reason why she could not devise the land to two or more of the children, requiring them to pay to the others certain ʌums of money, and charging the same on the land as quasi purchase money.   In an equitable sense they are considered as part of the land, as is remarked by DUNCAN, J., in Gause v. Wiley, 4 S. & R. 508.   She might, for that matter, have directed a sale of the farm, and of the personalty, if any of the latter remained, and ordered a division of the combined proceeds.

The sums directed to be paid, by the two sons, were undoubtedly charges on the farm, the realty and personalty being blended

by the will, and it being expressly stated that these sons took what was devised and bequeathed to them on the condition that they should pay the said sums of money: Cook et al. v. Petty et al., 108 Pa. 138; 2 Redfield on Wills, (2d ed.) 209. And the liens would remain, notwithstanding the existence of sufficient personal estate to pay them but which was not so applied: Cook et al. v. Petty et al., supra. They were discharged by the sheriff's sale of the farm and are payable, before the other liens, out of the proceeds: Hellman v. Hellman et al., 4 R. 440; Strauss' App., 49 Pa. 353; Lancaster Co. Nat. Bank's App., 127 Pa. 214.

As Mrs. Edson had no power to award to George K. Edson less than an absolute estate in what she allotted him, the learned auditor rightly gave effect to her alternative request giving the $600 absolutely: Horwitz v. Norris, 49 Pa. 213; Wickersham v. Savage, 58 Pa. 365; Smith's Est., 4 W. N. C, 265; Pepper's App., 120 Pa. 235.

Regarding the legacy to the heirs of Matilda Snyder, deceased, even if it be deemed invalid, the exercise of the power is only avoided to that extent, and the legacy falls into the residuary estate. The rule is thus stated in 2 Sugden on Powers, (3d Am. ed.) 14. "So where legacies are given by will under a limited power, to persons not objects of it, and the residue is given to proper objects, although expressly 'after payments of the above legacies,' the particular legacies, by analogy to the rule as to lapsed legacies, will fall into the residue, and no part of the fund will be considered as unappointed."

We see no error in the distribution ordered by the court below.

The decree is affirmed, the costs of the appeal to be paid by the appellants.