No. 8812.

COLLAR v. GAARN ET AL.

1. APPEALS AND ERROR—*Short Record.* The submission of a cause upon an agreed Short Record commended.

2. WILLS—*Construction.* Every will is to be construed as a whole, and effect given to each of its provisions if possible.

3. —— *Legacy—Specific or Demonstrative.* If compatible with the language employed, a legacy will be declared general or demonstrative, rather than specific.

4. —— *Construed.* Bequest of a note of $1,000, loaned to the I. O. O. F., to be delivered to the legatee "as soon as possible after my decease, or if that cannot be done she shall receive the interest until the principal is paid to her." The legatee was directed to turn over $100.00 towards "my funeral expenses", and requested to bequeath "the remainder of the proceeds of the note" after her death, to members of the family named. Prior to the death of the testator the note had been paid in part, and for the residue certain bonds of the Odd Fellows' Association had been accepted, and were a part of the estate. *Held* the legatee was entitled to the bonds.

*Error to the Denver District Court, Hon. George W. Allen,*
*Judge.*

Mr. PERCY S. MORRIS, for plaintiff in error.

Mr. FRANK L. GRANT, for defendant in error Ruby Ames
Gaarn.

Mr. Justice Hill delivered the opinion of the court:

THIS action is submitted upon an agreed short record
on error. (The practice is commendable.)    It involves a
construction of the will of Ann Eliza McLaughlin.    The
portions necessary to consider read:

"First.    As to my worldly estate and all property, real
or personal, which I shall have at the time of my decease,
I hereby dispose of it in the following manner, to-wit:

My real estate, consisting of lot fourteen (14) and ad-
joining fifteen (15) feet of lot thirteen (13), block forty-
four (44) Evans' Addition * * * probably worth eight
thousand dollars ($8,000)—I have also a note of one thou-
sand dollars ($1,000) of money loaned to the I. O. O. F.,
and held by Charles D. Cobb; also, a small note of sixty-
seven and fifty one hundredths dollars ($67.50) from An-
drew C. Gaarn, my niece's husband.    I do not wish the
above described real estate to be sold at a sacrifice if it is
possible to avoid it, but after my decease, in order to settle
the estate and pay some unpaid debts, my funeral expenses
and some bequests I wish to make, it will probably be neces-
sary to sell, so whenever it can be sold, in the judgment of
the executors of this will and of my niece, Ruby Ames
Gaarn, without too much sacrifice * * * I give them (my
executors) full power to sell and convey this property.
* * *

Third.    As soon as possible after my decease I wish my
niece, Emily Collar, to have the note of one thousand dol-
lars ($1,000) loaned to the I. O. O. F., and held by Charles
D. Cobb, turned over to her; or if that cannot be done, I

will that she shall receive the interest thereon until the principal is paid to her, and when the principal is paid, as her bequest is the largest I have made, I will and direct that she shall turn over one hundred dollars ($100) toward my funeral expenses or to the expenses of administering my estate. I pray my niece, Emily Collar, to make and publish a last will and testament, wherein the remainder of the proceeds of said note, whether in money or other property, shall be bequeathed and devised to Drue, wife of my nephew, Horatio Ames Collar, in the event of my niece, Emily Collar, dying without issue living at the time of her death."

The record discloses that prior to the death of the testatrix $550 of this so-called I. O. O. F. note had been paid and that the money received therefor with some $200 additional, and the note with this payment endorsed thereon, had, by her agent, Mr. Cobb, been exchanged for twelve bonds of $100 each, issued by the Odd Fellows' Temple Association of Denver and that these bonds were a part of her estate at the time of her death.

This suit was instituted by Ruby Ames Gaarn, the residuary legatee, to determine the interest of Miss Collar under paragraph 3 of the will, etc. The question is, was the bequest to her of this thousand dollar note a specific legacy, etc., or was it in the nature of a demonstrative legacy, which, in a way, applies to both general and specific legacies. The trial court held, in substance, that it was a specific legacy, and that it had been extinguished, for which reason that Miss Collar should take nothing by this bequest. We cannot agree with this conclusion. Had the language used devised the note to Miss Collar and stopped there, the bequest would have been specific and become extinguished by the payment or other disposition of the note during the lifetime of the testatrix. *Nusly v. Curtis,* 36 Colo., 464, 85 Pac. 846, 7 L. R. A. (N. S.) 592, 118 Am. St. 113, 10 Ann. Cas. 1134. But such is not the case here. In ascertaining the meaning of any portion of a will, the instru-

ment should be considered as a whole and effect given to all of it, if possible. 40 Cyc. 1408-1409. Paragraph 1 sets forth the testatrix's property. In paragraph 3 she says not only that she wants Miss Collar to have this note turned over to her, but if that cannot be done she will that she receive the interest thereon until the principal is paid to her, not until the principal is paid, but until it is paid to her. This language, in substance, not only bequeaths the note to her, but provides that if it cannot be given her, that the principal shall be paid to her; also that she should receive interest until such time as the principal is paid to her. It does not stop there, but provides that when the principal is paid, as her bequest is the largest, that she shall turn over $100 toward funeral expenses or the expenses of administration; and it does not stop there, but requests that Miss Collar, by will, under certain conditions, leave a certain amount of the proceeds of this note, whether in money or property, to another. In paragraph 7, under which Mrs. Gaarn was made the residuary legatee, it makes her such to the extent only "when all of the above bequests have been paid." As the bequest to Miss Collar is the only one, in any substantial amount, which it is claimed is specific, the language last quoted is further evidence of the testatrix's intent that it was to be demonstrative in character. This paragraph also contains the request that Mrs. Gaarn by will leave certain amounts to others. This also strengthens Miss Collar's contention that the bequest to her was demonstrative. In *Nusly v. Curtis, supra,* we said:

"Courts are not inclined to favor a specific bequest. If compatible with the language employed, they are disposed to interpret gifts as general, or demonstrative,"

Such being the general rule, when this will is considered as a whole, we conclude that the bequest to Miss Collar was in the nature of a demonstrative legacy, and that she is entitled to have it satisfied out of the Odd Fellows' Temple Association bonds. *School District v. International Co.,* 59 Colo. 486.

The judgment will be reversed and the cause remanded for disposition accordingly.

*Reversed and remanded.*

Decision *en banc.*

Chief Justice White dissenting.

Mr. Justice Allen not participating.

Decided January 7, A. D. 1918. Rehearing denied March 4, A. D. 1918.