**BARR LAKE VILLAGE METROPOLITAN DISTRICT, James R. Stitt, Receiver, Petitioners–Appellants,**

v.

**COLORADO WATER QUALITY CONTROL COMMISSION and Colorado Water Quality Control Division, Respondents–Appellees.**

**No. 91CA1093.**

Colorado Court of Appeals, Div. IV.

July 16, 1992.

Tallmadge, Wallace, Hahn, Smith & Walsh, P.C., David J. Hahn, John W. Smith, III, Cynthia A. Calkins, Denver, for petitioners-appellants.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Nettie J. Corrigan, Asst. Atty. Gen., Denver, for respondents-appellees.

Opinion by Judge JONES.

Petitioner, Barr Lake Village Metropolitan District, through its receiver, James R. Stitt (Barr Lake), appeals the judgment of the district court upholding the agency decision of respondents, Colorado Water Quality Control Commission (Commission) and the Colorado Water Quality Control Division (Division). We affirm.

Barr Lake is a metropolitan district organized under the predecessor statute to, and existing under, the Special District Act. Section 32-1-101, et seq., C.R.S. (1991 Cum.Supp.). On behalf of Barr Lake, an application was submitted to the Division for the building and operation of a domestic wastewater treatment facility to serve the district. Prior to the approval of such applications, the applicant must first obtain the approval of the Division and the Commission to construct the facility at a particular location, which is referred to as "site approval." See § 25-8-702(1), C.R.S. (1989 Repl.Vol. 11A).

On September 3, 1986, the Division approved a modified application for site approval. The site approval was based on certain conditions, including commencement of construction of the facility within one year and the requirement that Barr Lake abide by future recommendations by the Denver Regional Council of Governments (DRCOG) in a region-wide water quality management plan concerning wastewater treatment services which might differ from that approved in the site approval.

Barr Lake defaulted on bonds that had been issued to finance construction of the facility and became insolvent and tied up in litigation, its property was foreclosed on, and it failed to commence construction or meet other conditions of the site approval. Thus, on September 1, 1987, Barr Lake requested an extension of the site approval.

The Division denied the request because construction had not commenced, because Barr Lake's insolvency left doubtful whether it could appropriately manage the facility to minimize adverse impacts to water quality, and because Barr Lake's facility was of questionable value within DRCOG's planning efforts for the region. However, the division relented, in light of the impact the denial would have on Barr Lake's bond situation and, on May 18, 1988, extended the site approval to September 5, 1988, incorporating the conditions of the original site approval. The extension approval also provided that it was subject to termination if DRCOG's regional plan did not recommend that Barr Lake's facility serve the area covered in the site approval.

On August 1, 1988, the Receiver requested a second extension on the site approval. This request was approved, incorporating all previous conditions, and extending site approval to September 4, 1989. Notice was given that no further extensions would be granted.

When Barr Lake failed to commence construction or to meet all but one other condition during the time of the second extension, the Division denied a request to modify site approval and indicated that a new application would be required.

In the meantime, on or about April 10, 1989, the Governor certified approval of DRCOG's regional plan. The regional plan requires a different type of treatment facility than that originally proposed by Barr Lake and approved by the Division.

Barr Lake appealed the Division's denial of the third request for site approval extension to the Commission. The Commission affirmed the Division's decision on March 5, 1990, noting Barr Lake's management and financial problems which would impact the project, as well as the DRCOG requirements which "recommended a treatment system substantially different from that proposed by [Barr Lake]."

Barr Lake filed a complaint in the district court, pursuant to § 24-4-106, C.R.S. (1988 Repl.Vol. 10A), seeking judicial review of the Commission's order of March 5, 1990. *See* § 25-8-404, C.R.S. (1989 Repl.Vol. 11A). After considering written arguments, the district court, on April 8, 1991, affirmed the Commission's actions. Barr Lake then commenced this appeal.

## I.

■ Initially, the Commission and the Division move this court to dismiss Barr Lake's appeal because of its failure to meet the basic requirements of C.A.R. 28. They argue, relying, *inter alia*, on *Mauldin v. Lowery*, 127 Colo. 234, 255 P.2d 976 (1953), that Barr Lake has failed to set forth in its brief the issues presented for review.

While we agree that Barr Lake's brief is deficient relative to the requirements of C.A.R. 28, we have discerned that certain issues do in fact manifest themselves from a search through the briefs. Thus, this case differs, albeit only slightly by degree, from *Mauldin* and will not be dismissed. *See Allison v. Heller*, 132 Colo. 415, 289 P.2d 160 (1955) (Notwithstanding argument insufficient to authorize consideration upon review, the court may, in its discretion, notice whether any error appears of record.).

## II.

■ Barr Lake contends that the Commission and the Division exceeded their statutory authority in promulgating rules and regulations which provide that a site approval will expire one year from its approval date and that if construction has not commenced there must be a reapplication or request for time extension. We disagree.

Administrative regulations are presumed valid and will not be struck down on review unless the challenging party has carried its burden to demonstrate that the regulation is in excess of statutory authority or otherwise invalid beyond a reasonable doubt. *City of Aurora v. Public Utilities Commission*, 785 P.2d 1280 (Colo.1990); *Colorado Civil Rights Commission v. Travel-*

*ers Insurance Co.*, 759 P.2d 1358 (Colo. 1988).

The regulation in question was promulgated by the Commission pursuant to the direction of the General Assembly in the Colorado Water Quality Control Act (Act). Section 25-8-101, et seq., C.R.S. (1989 Repl.Vol. 11A). The Act sets forth the General Assembly's purposes for enacting the legislation in certain declarations, the general import of which is to facilitate the enjoyment and use of the waters of the state, to prevent injury to the beneficial uses of water, to develop the state's waters, and to achieve the maximum degree of water quality in the state's waters. Additionally, concern is expressed as to the pollution of the state's waters, and provision is made for the treatment of polluted waters and for the prevention, abatement, and control of new or existing sources of water pollution. Section 25-8-102, C.R.S. (1989 Repl.Vol. 11A).

The Commission is expressly delegated authority to implement the Act's legislative declarations. Section 25-8-202(2), C.R.S. (1989 Repl.Vol. 11A); *Amax, Inc. v. Colorado Water Quality Control Commission*, 790 P.2d 879 (Colo.App.1989). Furthermore, and pertinent to this matter, the General Assembly assigned to the Commission certain duties as to domestic wastewater treatment works, stating:

The commission shall develop and maintain a comprehensive and effective program for prevention control, and abatement of water pollution and for water quality protection throughout the entire state and, in connection therewith, shall

. . .

. . . .

(e) Perform duties assigned to the commission in [§ 25-8-701, et seq.] with respect to the *location*, design, construction, financing, and operation of domestic wastewater treatment plants....

Section 25-8-202(1), C.R.S. (1989 Repl.Vol. 11A) (emphasis added).

Thus, the General Assembly plainly delegated to the Commission and to the Divi-

sion the power to approve site locations of wastewater treatment facilities and to resolve related issues which arise concerning site approval.

Among other duties assigned to the Division are those of approving the commencement of construction, and the enlargement of the capacity of, domestic wastewater treatment works. Section 25–8–702, C.R.S. (1989 Repl.Vol. 11A). *See Colorado Water Quality Control Commission v. Town of Frederick*, 641 P.2d 958 (Colo.1982).

In § 25–8–702(2) and (3), C.R.S. (1989 Repl.Vol. 11A), the General Assembly has given broad guidelines for Division oversight of such treatment facilities. Thus, it is left to the Commission and the Division to develop rules to carry out the General Assembly's purposes concerning such facilities and specifically to regulate the processes and procedures by which approval is granted. *See Dodge v. Department of Social Services*, 657 P.2d 969 (Colo.App.1982).

The rule to which Barr Lake takes exception states:

> All site approvals become effective on the date of approval by the Division and will expire one year from the date of approval. Any project not commencing construction on or before that date must reapply or request a time extension....

5 Code Colo.Reg. 1002–12, § 2.2.5(4) (12–81).

We conclude, upon a consideration of the Act as a whole, that the subject rule is well within the powers conferred upon the Commission and the Division by the General Assembly to regulate approval as to location, construction, and remodeling of domestic wastewater treatment facilities.

We note, first, that the Commission's interpretation of its enabling statutory scheme is entitled to great deference. *Urbish v. Lamm*, 761 P.2d 756 (Colo.1988). Thus, that the Commission and the District have created rules which enable them an overview of facilities which they have approved in the recent past but which, as here, may not be in the construction stage and which may, over time, violate the purposes and objectives of the Act, is both logical and reasonable.

Secondly, in an industry of changing technology and increasing adverse impacts to state waters, annual review of site locations is appropriate to carry out the General Assembly's purposes. *See* §§ 25–8–102 and 202(2), C.R.S. (1989 Repl.Vol. 11A); *Hewlett–Packard Co. v. State, Department of Revenue*, 749 P.2d 400 (Colo.1988).

We conclude that Barr Lake has failed to carry its burden to demonstrate that the subject rule is invalid. *See Orsinger Outdoor Advertising, Inc. v. Department of Highways*, 752 P.2d 55 (Colo.1988) (the person seeking reversal of a denial of a permit has the burden of proof).

Accordingly, the judgment of the district court upholding the agency decision is affirmed.

CRISWELL and DAVIDSON, JJ., concur.